Opinion issued May 31, 2007

 






In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01092-CV






TEXAS ALCOHOLIC BEVERAGE COMMISSION, Appellant


V.


JESUS RODRIGUEZ D/B/A LA GAVIOTA NITE CLUB, Appellee






On Appeal from the 189th District Court

Harris County, Texas

Trial Court Cause No. 2005-63301






MEMORANDUM OPINION 

 Appellant, the Texas Alcoholic Beverage Commission (TABC), challenges the
judgment of the trial court, which reversed an order by the Honorable Robert Eckels,
Harris County Judge, who denied the renewal applications for wine-and-beer and on-premise late-hours licenses to appellee, Jesus Rodriguez d/b/a La Gaviota Nite Club
(the night club). (1) In its single issue, the TABC contends that the trial court
impermissibly substituted its judgment for that of the county judge and therefore
exceeded the parameters of the substantial-evidence standard and scope of review. 
We reverse.

Background


 The night club is located at 8011 Harrisburg, near its intersection with
Navigation in Houston, on land owned by Rodriguez. Rodriguez filed applications
with the TABC to renew his licenses in May 2004. The TABC denied his
applications in October 2004, based on protests received from the community. The
TABC dismissed the action from the TABC docket without prejudice and referred the
applications to Harris County Judge Robert Eckels, who then referred them to a

special master.

 The special master conducted a hearing in June 2005 and issued a report in
August 2005, recommending that renewals be denied on the grounds that the "the
place and manner in which [Rodriguez] may conduct his business warrants a refusal
of his [a]pplication based on the general welfare, health, peace, morals, safety, and
sense of decency of the people." See Tex. Alco. Bev. Code Ann. § 61.42(a)(3)
(Vernon Supp. 2006). The master supported this conclusion of law with nine fact
findings, and his report lists the parties who appeared at the hearing. 

 In addition to Rodriguez and the night club, who appeared through counsel, 
those at the hearing included an agent of the TABC, an assistant City of Houston
attorney appeared on behalf of Houston Mayor Bill White, as well as the president of
the Magnolia Park/Pineview Civic Association. The report identifies seven
witnesses, who included police officers and a representative of the Houston Mayor's
Citizens' Assistance Office. (2) 

 When Judge Eckels adopted the special master's report in October 2005, the
decision became the ruling of the TABC and thus subject to judicial review under the
Administrative Procedure Act (APA), Tex. Gov't Code Ann. § 2001.171 (Vernon
2000). See Lindsay v. Sterling, 690 S.W.2d 560, 562 (Tex. 1985) (construing former
version of APA, Tex. Rev. Civ. Stat. Ann. 6252-13a, § 19(a)); Tex. Alco. Bev.
Code Ann. § 61.34(a), 11.67(a)-(b) (Vernon 1995). 

 The night club's motion for rehearing challenged three of the findings in the
special master's report adopted by Judge Eckels, but did not specifically challenge
the conclusion that renewals be denied pursuant to section 61.42(a)(3) of the
Alcoholic Beverage Code, which considers "the general welfare, health, peace,
morals, safety, and sense of decency of the people." See Tex. Alco. Bev. Code
Ann. § 61.42(a)(3). After the night club's motion for rehearing was overruled as a
matter of law, the TABC sought judicial review in the trial court, which reversed the
county's judge's ruling and ordered the nightclub's applications remanded to the
TABC. This appeal challenges that ruling.

This Court's and the Trial Court's Review of TABC Order


 The TABC contends that the trial court erred by reversing the order of the
TABC, acting through the county judge, and by remanding the applications to the
TABC, because substantial evidence supports the order. We agree.

A. "Place and Manner" of Conducting Business Rationale

 Section 61.42 of the Alcoholic Beverage Code lists mandatory grounds for
refusal to issue a license to a distributor or retailer. Tex. Alco. Bev. Code Ann. §
61.42. Pursuant to section 61.42(a)(3), on which the ruling challenged here is based,
the county judge "shall refuse to approve an application . . . if he has reasonable
grounds to believe and finds that the place and manner in which the applicant . . . may
conduct his business warrants a refusal of a license based on the general welfare,
health, peace, morals, safety, and sense of decency of the people." Tex. Alco. Bev.
Code Ann. § 61.42(a)(3). An applicant who is denied an application may appeal to
the district court of the pertinent county "under the substantial evidence rule." Tex.
Alco. Bev. Code Ann. § 61.34(a), 11.67(a)-(b) (Vernon 1995); see Tex. Gov't
Code Ann. § 2001.174(1)-(2)(E) (Vernon 2000). 

B. "Substantial Evidence" Review

 The substantial evidence rule governs our review of both the trial court's
judgment and the final order of the TABC, acting through Judge Eckels. Four Stars
Food Mart v. Tex. Alcoholic Beverage Comm'n, 923 S.W.2d 266, 269 (Tex.
App.--Fort Worth 1996, no writ). The test in applying this rule "is whether the
evidence as a whole is such that reasonable minds could have reached the same
conclusion that the agency must have reached in order to justify its action." Tex.
Alcoholic Beverage Comm'n v. Sierra, 784 S.W.2d 359, 360 (Tex. 1990). Whether
substantial evidence supports an administrative decision is a question of law. Tex.
Dep't of Public Safety v. Alford, 209 S.W.3d 101, 103 (Tex. 2006). We direct our
review to whether the county judge's order is reasonable, rather than whether it is
correct, and we may presume that substantial evidence supports the special master's
findings, inferences, conclusions, and decisions, as adopted by the county judge. See
Garza v. Tex. Alcoholic Beverage Comm'n, 138 S.W.3d 609, 613 (Tex.
App.--Houston [14th Dist.] 2004, no pet.); Four Stars, 923 S.W.2d at 269. To
warrant the trial court's having set these aside, the night club had to establish the lack
of substantial evidence to support them. See Four Stars, 923 S.W.2d at 269-70. 
Regardless of the county judge's stated reasons for its order, we may uphold the
decision if there is any valid basis for it in the record. Garza, 138 S.W.3d at 613. 

 The trial court's role in determining, in a suit for judicial review, whether
substantial evidence supports the county judge's ruling differs from and is more
limited than when it conducts a trial de novo. Four Stars, 923 S.W.2d at 269 (citing
City of San Antonio v. Tex. Water Comm'n, 407 S.W.2d 752, 756 (Tex. 1996)). 
Substantial evidence need only amount to more than a mere scintilla; proof by
preponderance of the evidence is not necessary. See Garza, 138 S.W.3d at 613
(citing Tex. Health Facilities v. Charter Med.-Dallas, 665 S.W.2d 446, 453 (Tex.
1984)). Accordingly, the evidence from the administrative proceeding may satisfy
the substantial-evidence test even if the evidence preponderates against the county
judge's decision. Id.; Four Stars, 923 S.W.2d at 269 (citing Haynes v. City of
Abilene, 659 S.W.2d 638, 640 (Tex. 1983)). Neither this Court nor the trial court may
weigh the evidence independently or substitute its judgment for that of the county
judge. See Sierra, 784 S.W.2d at 361. The burden is on the licensee to show that
substantial evidence did not support the administrative order, Four Stars, 923 S.W.2d
at 269-70, which may be reversed only if the challenging party establishes that it
lacked any reasonable basis. See Mireles v. Tex. Dep't of Pub. Safety, 9 S.W.3d 128,
131 (Tex. 1999). 

C. Substantial Evidence Analysis

 The dispositive issue in a proceeding that seeks denial of renewal of an
application brought pursuant to section 61.42(a)(3) is whether the county judge "has
reasonable grounds to believe and finds that the place and manner in which the
applicant . . . may conduct his business warrants a refusal of a license based on the
general welfare, health, peace, morals, safety, and sense of decency of the people." 
Tex. Alco. Bev. Code Ann. § 61.42(a)(3). No set formula determines the "place
and manner" determination under section 61.42(a)(3), by which the county courts
exercise great discretion pursuant to legislative grant. See Four Stars, 923 S.W.2d
at 272.

 1. Evidence presented to Master

 Rodriguez not only owns, but manages the night club, and he works there every
day. The nightclub opens daily at 5 p.m. Closing is at 2 a.m. on Monday through
Wednesday, at 3 a.m. on Thursdays and Sundays, and at 4 a.m. on Fridays and
Saturdays. Rodriguez employs one part-time server on the weekend. He employs one
security officer on Thursdays and Sundays and two security officers on Fridays and
Saturdays, but he serves as security officer himself from Monday through
Wednesday. He personally cleans up the empty beer bottles and trash that accumulate
in the club's parking lot personally and on a daily basis. He described the area as
commercial, but acknowledged that a residence is directly behind the nightclub and
that his customers park "all along" 80th Street and on Avenue C, where he also picks
up trash. 

 Rodriguez denied that any fights occurred at the night club during the previous
year and stated that he had no memory of a stabbing alleged to have occurred on May
29, 2004. He denied serving any alcohol after 2 a.m., when he serves only
nonalcoholic beer, mineral water, and soft drinks, but acknowledged that customers
might arrive in an intoxicated state from other bars that have closed. Rodriguez had
recently hired a new security company and indicated to the master that he would close
the night club at 2 a.m. if his application were granted.

 A resident whose home is a block away from the night club described his
concerns with loud music, traffic, and his fear for the safety of his children because
of speeding cars leaving the club parking lot. Another life-long resident of the area
stated that she had observed "people getting out of the La Gaviota Night Club[,]
speeding with loud music and abusive language[,] and urinating outside, [in] daylight
[sic]." A third resident stated that she narrowly avoided a collision with a vehicle that
had pulled out quickly from the night club lot, and that she and her family "simply
cannot and do not drive by the [night club] on Friday or Saturday nights." 

 A Houston Police officer who testified at the hearing before the special master
stated that he had participated in 27 arrests that occurred in the parking lot of the
night club on the night of April 16 and early morning of April 17, 2004. Of these
arrests, 23 were for public intoxication, two were on outstanding warrants, one was
for solicitation of sale of alcohol, and another was for possession of a controlled
substance. The officer who patrolled the area regularly stated that he had responded
to between 20 and 30 calls concerning the night club during the year preceding the
applications for renewal. 

 2. TABC Findings Challenged by Night Club

 In its motion for rehearing to the county judge and in the trial court, the night
club challenged the following findings by the TABC, acting through the county
judge:

 6. On April 17, 2004, HPD vice officers entered La Gaviota Nite
Club at 3:00 AM and arrested 23 patrons for Public Intoxication. 
Another patron was arrested for Possession of a Controlled
Substance (cocaine). An employee was arrested for Solicitation
of an Alcoholic Beverage by an Employee.


 7. An HPD officer who regularly patrols near Applicant's premises
has received 20-30 Calls for Service to Gaviota Nite Club within
the last year. Some of these calls led to the filing of criminal
charges against club patrons.


 8. On May 29, 2004, a patron was stabbed inside La Gaviota Nite
Club.


 The night club challenged these findings by attempting to impeach, discredit,
and dismiss consideration of the evidence presented to the county judge on several
different grounds, including hearsay challenges and discovery-based objections. The
club did not, however, focus on the county judge's ultimate "place and manner"
conclusion not to renew the night club's licenses under section 61.42(a)(3) of the
Alcoholic Beverage Code. 

 With respect to the sixth finding, the night club argued that public intoxication
was not a violation of the Code; that, though sale of alcohol to an intoxicated person
is a violation of the Code, there was no admissible evidence that the offense occurred;
and that it was never shown that the cocaine arrest or the solicitation of alcohol arrest
resulted in a conviction. The night club asserted similar objections to the eighth
finding and generally argued that the number of calls was not excessive, that there
were actually fewer calls, or, in the alternative, that the calls were not probative of
conduct that warranted denying the night club's application. The night club
dismissed the eighth finding, that a stabbing occurred on the premises, based on its
hearsay-within-hearsay objections and relied on Rodriguez's lack of any recollection
that a stabbing occurred. 

 3. Substantial Evidence Supports "Place and Manner"Ruling

 By reversing the ruling of the TABC, acting through the county judge, the trial
court effectively determined that the TABC lacked any reasonable basis, see Mireles,
9 S.W.3d at 131, to deny the night's club's requests to renew its applications for a
wine and beer license and an after-hours license because "the place and manner in
which [Rodriguez] . . . may conduct his business warrants a refusal of a license based
on the general welfare, health, peace, morals, safety, and sense of decency of the
people." See Tex. Alco. Bev. Code Ann. § 61.42(a)(3). We cannot agree that the
county judge lacked a reasonable basis for this determination. 

 Section 61.42(a)(3) authorized the county judge to refuse to renew the night
club's applications because the place and manner in which Rodriguez "may" conduct
his business warranted refusal because of the general welfare, health, peace, morals,
safety, and sense of decency of the people. By employing the word "may," the statute
does not require a finding that Rodriguez conducted the business in a place or manner
that warranted the refusal, but only that the manner in which he might conduct it
warranted refusal. See id.

 It is undisputed that the night club remained open until at least 2 a.m. early in
the week, and until 3 or 4 a.m. later in the week and on weekends. It is also
undisputed, through Rodriguez's own testimony, that customers who arrived at the
night club after other clubs closed could be intoxicated, though he denied serving
alcohol to them. Rodriguez denied knowledge of any fights at the club and, in
response to a direct question from the special master concerning the stabbing inside
the night club on May 29, 2004, also denied knowledge of that incident. Yet,
Rodriguez had only one part-time server and limited security personnel and also
claimed that he was present at the night club daily to manage it. In determining, in
the eighth finding, that the stabbing had occurred, the special master may have
reconciled Rodriguez's conflicting testimony based on a credibility determination that
we may not disturb. See Sierra, 784 S.W.2d at 361. A stabbing on the premises,
coupled with Rodriguez's testimony acknowledging that his late-arriving customers
may have become intoxicated elsewhere is substantial evidence of a manner of
operating the night club in disregard of the general welfare, health, peace, morals,
safety, and sense of decency of the public. See Four Stars, 923 S.W.2d at 271. 
Customers who might already be intoxicated may have also occasioned the
complaints, by neighboring residents, of noise, loud music, speeding cars, abusive
language, and urinating in public. 

 Rodriguez did not dispute the noise from the night club that formed the basis
of the complaints of several residents, except through the testimony of a single
resident who lived directly behind the night club and had "no complaints." But, by
acknowledging that his customers parked not only in his lot, but on neighboring
streets Rodriguez underscored residents' complaints concerning excessive traffic. 
The same testimony concedes the presence of abundant trash, including beer bottles. 
Despite Rodriguez's testimony that he felt compelled to clean up the trash and picked
it up daily, the special master could reasonably have determined that Rodriguez
nonetheless enabled the conditions that generated the trash, not only in his lot, but on
the neighboring streets. Given Rodriguez's testimony that he refused to serve alcohol
after 2 a.m., though he remained open until 3 or 4 a.m. on weekends, the special
master may have reasonably found that the night club fostered consumption of
alcohol that late-arriving customers may have brought to the area of the night club,
where they consumed it and discarded the containers, not only in his lot, but on the
surrounding streets, in disregard of the general welfare, health, peace, morals, safety,
and sense of decency of the public. Alternatively, the master may have determined,
based on a credibility determination, that Rodriguez actually did provide alcohol after
2 a.m.

 As our sister court emphasized in Four Stars, the "general welfare, health,
peace, morals, safety, and sense of decency of the people" factors of section
61.42(a)(3) of the Alcoholic Beverage Code permit consideration of conduct that falls
short of constituting criminal conduct resulting in a conviction. See 923 S.W.2d at
271-72 (referring to large scale gang gatherings). Accordingly, the arrests referred
to by the officers who testified before the special master also constitute substantial
evidence that reasonably supports not only the special master's sixth and seventh
findings, but also the master's ultimate conclusion, adopted by the TABC, acting
through the county judge, that the place and manner in which Rodriguez "may"
conduct his business warranted refusal to renew his applications because of the
general welfare, health, peace, morals, safety, and sense of decency of the people.

 Having thus concluded that substantial evidence, as the Government Code
defines that term, supports the TABC's refusal to renew the night club's applications,
we sustain the TABC's sole issue. 


Conclusion


 We reverse the judgment of the trial court and remand the cause.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.

1. The record reflects that the night club did not serve wine and served only beer,
including nonalcoholic beer, and mineral water and soft drinks. 
2. A representative from the office of County Commissioner Sylvia Garcia also appeared
to submit a letter, the contents of which do not appear in the record. The record
merely reports that the letter was presented, and the trial court accorded it "zero
weight."